## HARTFORD FIRE INS. CO. v. CARTER et al.

### No. 4398.

United States Court of Appeals Tenth Circuit.

May 13, 1952.

Walter D. Hanson, Oklahoma City, Okl. (Stephen G. Evans, Oklahoma City, Okl., on the brief), for appellant.

Richard W. Fowler, Oklahoma City, Okl. (Hardin Ballard, Purcello, Okl., and Richardson, Shartel & Cochran, Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiffs brought this action to recover the proceeds of a fire insurance policy which had been issued to cover property claimed to be owned by them. The defendant insurance company admitted the issuance of the policy and the destruction of the property by fire. As a defense it alleged that in the execution of the proofs of loss the plaintiffs were guilty of fraud and false swearing as to their title and interest in the insured property which would prevent recovery on the policy. The basis of this defense was that the plaintiffs were not the real owners of the property as sworn to in their proof of loss. The principal issue, therefore, before the trial court was whether plaintiffs had an insurable interest in the property. This question was submitted to a jury which found for the plaintiffs and judgment was entered accordingly.

On or about October 17, 1949, Chester Ellis conveyed to the plaintiffs by warranty

deed all his right, title and interest in the real property upon which was located the insured property including furniture and fixtures. Prior to this transfer, the insurer had issued a fire insurance policy on the building and the furniture and fixtures to Ellis covering loss or damage by fire in the amount of $1,000 upon the building and $1,000 upon the furniture and fixtures. At the time of the purchase of the property, this policy was assigned to the plaintiffs and the assignment was consented to by the defendant through its authorized agent. Thereafter, upon solicitation of an agent for the insurer, and in consideration of an additional premium, the face amount of the policy was increased to $2,000 on the building, $1,500 on the furniture and fixtures, and there was added an additional coverage of $500 upon the stock of merchandise situated in the building. While the policy was in effect, the building, furniture and fixtures, and the stock of merchandise were completely destroyed by fire. The proof of loss submitted by plaintiffs contained a statement that they were the sole owners of the insured property.

Paul Hayes was a former husband of the plaintiff, Verde Mae Hayes. The plaintiff Carter and Paul Hayes negotiated the purchase of the property from Ellis and the full amount of the purchase price of $2,500 was paid by Paul Hayes. The evidence is without contradiction that Carter agreed to purchase a one-half interest in the property and gave his note to the plaintiff Hayes for one-half the purchase price. He made one payment on this note of $50 to Paul Hayes. At the time of the purchase, Paul Hayes had remarried and was having difficulty with his wife. In a deposition taken before trial, plaintiff Hayes testified that Paul Hayes had told her that he did not want his wife to be able to locate any property in his name. On trial she testified that she may have so testified but if she did she was mistaken as she had not been told this but it was her own conclusion. Also in the deposition this question was put to her, "Then actually Paul Hayes owned a half interest in the property?" and she replied "That's right." At the trial her answer to a similar question was, "He put up the

money but it was deeded to me and I have the deed." A tavern was operated on the premises and it was necessary that the operators of the tavern obtain an Oklahoma beer license. A number of years before, Paul Hayes had been convicted of a violation of the Oklahoma laws regarding intoxicating liquor. The license was obtained in the name of the plaintiffs. This evidence was obviously for the purpose of proving that Paul Hayes was the real owner of the property and that the warranty deed conveying it to the plaintiffs was a subterfuge and for his convenience and benefit. Paul Hayes testified that the deed was made to his former wife for a one-half interest in the property at his request and that it was a gift to her. This evidence is uncontradicted.

The court submitted interrogatories directing the jury to determine from a preponderance of the evidence whether plaintiffs were the beneficial owners of the property. The jury found that the plaintiffs were the beneficial owners and that they had not falsely set forth their interests in the destroyed property when the proof of loss was submitted. It fixed the value of the merchandise destroyed at $230.44, the fixtures at $1,500 and the damage to the building at $2,000. The policy contained this provision: "This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." The proof of loss filed by the plaintiffs contained a statement that plaintiffs owned the insured property and that no one else had any interest therein, either as mortgagee or otherwise. It is the contention of the defendant that upon this proof there was no issue for the jury on the question of ownership of the insured property as it showed conclusively that Paul Hayes was its real owner.

The law appears to be well settled that recovery cannot be had upon an insurance policy by a person who has no insurable interest in the property covered by the policy. Fireman's Fund Ins. Co. v.

Cox, 71 Okl. 9, 175 P. 493; Geisler v. Mutual Benefit Health & Accident Ass'n, 163 Kan. 518, 183 P.2d 853; Cherokee Foundaries v. Imperial Assur. Co., 188 Tenn. 349, 219 S.W.2d 203, 9 A.L.R.2d 177; cases cited, annotation 9 A.L.R.2d 181. It has generally been held that there is no insurable interest where the claimant holds the insured property under a conveyance which is absolutely void. There is an insurable interest where the title of the insured may be void as against creditors. Couch on Insurance, Sec. 923; National Union Fire Ins. Co. v. Short, 6 Cir., 32 F.2d 631, 633, 64 A.L.R. 753, annotation 757. In considering facts similar to those here, that court said: "We think the fact that the conveyance to Mrs. Short from her husband of his undivided one-half of the property, without pecuniary consideration therefor, and with intent on his part thereby to prevent its application to his personal debts, did not make her ownership other than unconditional and sole. Her title to the undivided one-half of the property previously held by her was entirely unassailable; and her title to the other one-half, conveyed to her by her husband, was good, not only as against him, but against all the world. There was no other or outstanding title except as possessed by her. There was no other owner in whole or in part. The most that can be said is that she held title to the undivided one-half interest in question, subject to the right of her husband's creditors to have the property applied to the payment of such judgments as they might obtain against him, just as she held her original undivided one-half subject to such judgments as her own creditors might obtain against her." In any event, unless the evidence is such that men of reasonable minds could reach only one conclusion, it is a question for the jury. Transcontinental Ins. Co. of New York v. Minning, 6 Cir., 135 F.2d 479; Columbian Nat. Life Ins. Co. v. Rodgers, 10 Cir., 93 F.2d 740. There are circumstances here which might cast doubt upon the purpose of the plaintiffs being named grantees in the deed from Ellis, but they do little more than cast suspicion upon the transaction and do not meet the requirements necessary to sustain the affirmative defense of false swearing. Brayer v. John

Hancock Mutual Life Ins. Co., 2 Cir., 179 F.2d 925; Mercury Ins. Co. v. Miles, 190 Okl. 607, 126 P.2d 74; 29 Am.Jur., Insurance, Sec. 1440. The evidence is without dispute that Carter owned a one-half interest in the property and executed and delivered his note and mortgage for the payment of that one-half interest. The evidence is also without dispute that Paul Hayes intended to give the other one-half interest to his former wife and had a deed for that purpose executed and delivered to her. The conveyance was regular on its face and even if the contention of the insurer is correct, it was no more than a voidable transaction.

If the conveyance was for fraudulent purposes and there was some arrangement whereby plaintiff Hayes agreed to reconvey the property to her former husband, that agreement could not be enforced, and she had an unassailable title unless it should be set aside by creditors of Paul Hayes. 9 Am. Jur., Cancellation of Instruments, Sec. 50; Warner Brothers Theatres v. Cooper Foundation, 10 Cir., 189 F.2d 825; Porter v. Jones, 10 Cir., 176 F.2d 87, certiorari denied 338 U.S. 885, 70 S.Ct. 188, 94 L.Ed. 543; National Union Fire Insurance Co. v. Short, supra. The evidence was ample to sustain the findings of the jury.

█ The trial court, in submitting interrogatories to the jury, requested it to find from a preponderance of the evidence "the fair market value, if any, of the damage to the buildings, as a result of the fire, not to exceed the sum sued for of $2,000." The jury was instructed that fair market value as used in the interrogatories is the amount which, considering all the circumstances, a buyer willing to buy but not obligated to buy would give for the property to a seller willing to sell but not obligated to sell. The insured objected to this instruction upon the ground that the fair market value was not the measure of damages. It is insisted here that the actual cash value is the measure of damages in such cases. If there is any real difference in the terms "fair market value" and "cash value" (Black's Law Dictionary, pp. 273 and 716), we need not determine it now. During the trial it was stipulated into the record

996

that the value of the stock of merchandise destroyed was $230.44 and that the value of the fixtures was $1,619.00. The finding of the jury did not exceed these amounts. The proof of loss submitted to the company stated that the actual cash value of the building was $2,500. The insurer, by letter to attorneys for the plaintiffs, stated that the replacement cost of the building was $3,006.60 with a 50% depreciation "leaving a sound value at the time of loss of $1,503.-30." The insurer's own evidence showed that one-fourth of the value was attributable to the frame portion of the building and three-fourths thereof to the concrete portion; that the frame portion was 13 years old and would depreciate at the rate of 5% per year, and that the concrete portion of the building was 5 years old and would depreciate at the rate of 4% per year. Using the insurer's value of the building and its depreciation figures to arrive at the loss, the result is more than the findings of the jury. It is difficult to perceive any prejudice in the instruction.

■ Finally, it is contended that the court erroneously permitted plaintiffs to offer evidence contrary to and in conflict with testimony given by the plaintiff Hayes in the deposition taken before trial, on the ground that it was a judicial admission and could not be contradicted. Paul Hayes testified that he bought the property and gave a one-half interest in it to the plaintiff Hayes. In substance, the plaintiff Hayes testified in the deposition that her former husband told her that he did not want his wife to be able to locate anything in his name; that her former husband actually owned a one-half interest in the property in question; that there was some doubt about the ability of Paul Hayes and Carter to obtain a beer license for the place. On trial she testified that she had read the deposition prior to the trial and that some of the answers did not sound right to her, although she may have given them; that she was in error in stating that Paul Hayes had told her that he didn't want his former wife to be able to locate anything in his name, and that this was her own conclusion. It is noted she did not testify that she was made a grantee in the deed for this purpose. When questioned on trial as to whether Paul Hayes owned a one-half interest in the property she merely replied that "he put up the money but it was deeded to me and I had the deed." Her statement that Paul Hayes owned a one-half interest in the property was not a statement of fact, it was merely a statement of her opinion on a question of law. Sturm v. Boker, 150 U.S. 312, 336, 14 S.Ct. 99, 37 L.Ed. 1093. It is apparent that she arrived at this conclusion because her former husband had paid for the one-half interest. Her testimony in the deposition as to facts was not of such a nature that would preclude her recovery. The undisputed facts are that she had title to a one-half interest in the property by a deed regular on its face, executed by the owner of the property. The statements made in answer to questions propounded in the deposition do not change this fact. Under some circumstances testimony of a party to an action might be a judicial admission by which it would be bound, but, as in this case, where the testimony was for the purpose only of stating facts relating to a transaction, the character of which, if true, would not be an absolute bar to recovery, it is not to be considered a judicial admission which cannot be contradicted. Ordinarily previous contradictory evidence of a party or a witness concerning which there could be an honest mistake, goes to the credibility of the evidence and is for the jury. Security National Bank of Duncan v. Johnson, 195 Okl. 107, 155 P.2d 249, 169 A.L.R. 790; Alamo v. Del Rosario, 69 App.D.C. 47, 98 F.2d 328; Schnee v. Southern Pac. Co., 9 Cir., 186 F.2d 745; Boulter v. Commercial Standard Ins. Co., 9 Cir., 175 F.2d 763; Canadian Pac. Ry. Co. v. Sullivan, 1 Cir., 126 F.2d 433, certiorari denied 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766.

Judgment is affirmed.